RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0342P (6th Cir.)
File Name: 02a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PETERSON NOVELTIES, INC.;
and HAROLD BARMAN,
     *Plaintiffs-Appellants,*

     *v.*

CITY OF BERKLEY; and
RAYMOND ANGER,
     *Defendants-Appellees.*

No. 00-2037

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73256—John Corbett O'Meara, District Judge.

Argued: March 8, 2002

Decided and Filed: October 1, 2002

Before: KENNEDY and BOGGS, Circuit Judges; and
COFFMAN, District Judge.

———————————

[*] The Honorable Jennifer B. Coffman, United States District Judge for
the Eastern and Western Districts of Kentucky, sitting by designation.

_____

**COUNSEL**

**ARGUED:**   Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellants.    Julie McCann O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield Hills, Michigan, for Appellees.   **ON BRIEF:**    Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellants.    Julie McCann O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield Hills, Michigan, for Appellees.

_____

**OPINION**

_____

  BOGGS, Circuit Judge.  Peterson Novelties, Inc. and its owner, Harold Barman (collectively "Peterson"), appeal the district court's dismissal of their § 1983 claims against the City of Berkley, Michigan (the "City") and Detective/Sergeant Raymond Anger of the Berkley Public Safety Department.  The district court held that the claims, which arose out of Peterson's operation as a fireworks retailer during 1995 and 1996, were "inextricably interwined" with issues presented to a Michigan state court at that time and were thus precluded by operation of the *Rooker-Feldman* doctrine.  On appeal, Peterson argues (1) that the *Rooker-Feldman* doctrine does not apply to this situation, and (2) even if it did apply to some of Peterson's claims, it would not operate to preclude all of the claims in the suit.  For the reasons that follow, we affirm the district court's disposition.

**I**

  This case begins as Michigan fireworks cases often do, with a fireworks retailer attempting to obtain a seasonal sales license to sell fireworks in a Michigan municipality.  In 1995,

preclusion under Michigan law bars this court from considering Peterson's unreasonable search and seizure claim now. *Ibid.*

## IV

For the foregoing reasons, we AFFIRM the district court's order granting the defendants' motion for judgment on the pleadings.

Peterson applied for a permit to sell consumer fireworks in Berkley and was denied a permit. Peterson filed suit in Oakland County Circuit Court, complaining that the denial violated various of its rights and requesting that the court order the City to grant the permit. After an evidentiary hearing, the state court issued a temporary restraining order for the 1995 season, ordering the City to grant Peterson the permit.

The 1995 case still open, Peterson filed another motion in state court in April 1996 to compel the City to process a permit application for that year. On May 9, 1996, the state court issued a temporary restraining order compelling the City to issue Peterson a seasonal sales permit for the sale of fireworks not prohibited by law. The order specifically listed fireworks that were prohibited under Michigan law, including firecrackers, torpedoes, skyrockets, roman candles, etc.

The specifics of what occurred next are disputed by the parties. However, it is clear that on or about June 24, 1996, Detective Anger, having received information regarding the possible sale by Peterson of illegal fireworks, inspected the tent out of which Peterson was operating, seized fireworks he believed to be illegal, and arrested several Peterson employees. The City alleges that Detective Anger first went to inspect the tent on June 24 and purchased $91.16 worth of fireworks he believed to be illegal, but took no further action. Then, according to the City, on June 25, the Oakland County Prosecutor issued a warrant signed by another state judge and pursuant to that warrant the City seized fireworks it determined to be offered for sale in violation of state law and arrested the Peterson employees. Peterson claims that the City undertook a warrantless raid on or about June 24, seized the fireworks and arrested the employees, and then got the warrant.

Either way, it is clear that Peterson responded by filing for an emergency show cause order, demanding that the City show why it should not be held in contempt of the court's

May 9 restraining order. In its emergency motion, Peterson argued that it had been operating legally and within the parameters of the court's previous orders and that the City had intentionally acted contrary to the court's order, seizing fireworks and arresting employees without a warrant. They argued that the seizures were illegal and "subjected [the plaintiffs] to irreparable harm in their business and liberty interests." Peterson asked the court to prevent the City from applying for a warrant based "on the false claim that Plaintiffs are engaged in illegal activity" without attaching a copy of the court's May 9 order to any such application.

The judge who issued the May 9 order was temporarily unavailable, so the parties appeared before another judge of the Oakland County Circuit Court, who directed the parties to appear before the original judge on July 1. Then, on June 26, apparently in reaction to the City's intervening seizure and arrest, that same judge issued the show cause order, ordering the City in the meantime to return all seized consumer fireworks not needed for evidence.

The original judge held the show cause hearing on July 1, 1996, during which he took testimony and viewed demonstrative evidence. He issued an order on July 3, 1996 reaffirming his May 9 order. He held that Peterson could continue to operate its business selling consumer fireworks not specifically enumerated as illegal by the Michigan fireworks statute. However, the judge did not find the City in contempt of his May 9 order and he did not award contempt damages.

Peterson then applied to the same judge for declaratory relief, seeking an order that the Michigan statute prohibiting the sale of certain fireworks was void for vagueness, and the court granted the relief. This finding was later effectively overturned by the Michigan Court of Appeals; however, based on this declaratory relief, the state district court dismissed the pending criminal charges against Barman. The

and prosecution." *Id.* at 312. In rejecting Peterson's state law false arrest claim in its November 2001 decision, the Oakland County Circuit Court held:

> [T]here was ample probable cause to arrest [Barman]. Plaintiff was arrested pursuant to a warrant for selling illegal fireworks. Detective Anger observed employees at Plaintiff's business selling fireworks identified by statute to be illegal. Based upon that information, a warrant for Plaintiff['s] and his employees['] arrest was issued by the Oakland County Prosecutor's Office.

*Peterson Novelties*, No. 00-027-399-CZ, at 4. The state court having held that there was probable cause to justify Barman's arrest, this court is precluded from reconsidering the issue for the same reasons that this court is barred from reconsidering the issue of Detective Anger's entitlement to take advantage of the claim-preclusive effect of Peterson's earlier state court suit. Accordingly, Peterson's malicious prosecution claim is properly dismissed.

Peterson's final claim, alleging unreasonable search and seizure, is also properly dismissed based on the November 2001 state court decision, though possibly for a different reason. It is not clear from the record before this court what § 1983 claims Peterson brought before the state court in that action. If he brought an unreasonable search and seizure claim, then this court would be precluded from considering that claim, much as we are estopped from reconsidering the issues of whether Detective Anger can take advantage of the claim-preclusive effect of the 1996 state court decision and whether there existed probable cause to justify Barman's arrest. However, even if Peterson did not bring such a claim before the Oakland County Court in 2001, it is clear that Peterson's unreasonable search and seizure claim is "based on the same transaction or events" as those at issue in that case. *See Ditmore*, 625 N.W.2d at 466. Therefore, since the 2001 Oakland County case was decided on the merits, resulted in a final decision, and involved the same parties, claim

512 U.S. 477 (1994), these claims did not accrue until the criminal charges against Barman were dismissed in 1998. Assuming without deciding that this is so, claim preclusion arising from the 1996 state court action would not bar these claims.

However, as noted above, Peterson continued to prosecute claims against the City and Detective Anger in state court. As also noted above, the Oakland County Circuit Court held in a November 2001 decision that Peterson's § 1983 claims were barred by claim preclusion arising from Peterson's 1996 state court action. The court, in the same decision, also addressed and rejected on the merits state law claims Peterson brought for malicious prosecution and false arrest. *See Peterson Novelties*, No. 00-027-399-CZ, at 3.

In light of the Michigan court's rejection of Peterson's state law malicious prosecution claim, the City asks this court to hold that it is precluded from considering Peterson's malicious prosecution claim now.

In the past, the City would have been correct, as this court once defined the elements of a Fourth Amendment malicious prosecution claim in part by reference to the relevant state law analogue. *See Coogan v. Wixom*, 820 F.2d 170, 174-75 (6th Cir. 1987). However, this court recently reconsidered this practice in light of intervening Supreme Court case law, and has now made it clear that "we may no longer rely on the state law of malicious prosecution to define the proper cause of action for a federal malicious prosecution claim under § 1983." *See Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) and *Frantz v. Village of Bradford*, 245 F.3d 869, 874-75 (6th Cir. 2001)).

However, this court made clear in the same case that, while the specific elements of a federal malicious prosecution claim may not be entirely clear, at the very least a plaintiff must show "that there was no probable cause to justify her arrest

prosecutor's appeal of this dismissal was finally dismissed in July 1998, pursuant to a stipulation by the parties.

On June 29, 1999, Peterson and others filed a two-count complaint in federal court against the City and Detective Anger. In the first count, the Plaintiffs alleged First Amendment retaliation, the deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments, malicious prosecution in violation of the Fourth and Fourteenth Amendments, and unreasonable search and seizure in violation of the Fourth Amendment. In the second count, the plaintiffs alleged various state law causes of action. The district court dismissed the second count, and Peterson and Barman filed an amended complaint on July 29, 1999, in which they were the only plaintiffs and in which they alleged only the violations listed in the first count.

The defendants moved for summary disposition and the court held a hearing on the motion. The defendants argued that since Peterson's claims all arose out of the same facts that formed the basis of Peterson's emergency motion in state court seeking a finding of contempt against the City, the new claims were precluded by *Rooker-Feldman*. Alternatively, the defendants argued that Peterson's suit was barred by claim preclusion based on the earlier state court suit because all of Peterson's claims could have been brought in the earlier suit.

The district court granted the defendants' motion for judgment on the pleadings, holding that Peterson's claims were "inextricably intertwined" with issues earlier presented to the state court and were therefore precluded by the *Rooker-Feldman* doctrine. *See Peterson Novelties, Inc. v. City of Berkley*, No. 99-73256, 2000 WL 1279169, at *2 (E.D. Mich. Aug. 4, 2000). It is from this holding that Peterson appeals to this court.

## II

*The District Court's Application of the* Rooker-Feldman
*Doctrine*

The *Rooker-Feldman* doctrine, derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims "inextricably intertwined" with issues decided in state court proceedings. *See, e.g., Patmon v. Michigan Supreme Court*, 224 F.3d 504, 506 (6th Cir. 2000) (noting that, pursuant to *Rooker-Feldman*, application to the Supreme Court is "the only avenue for federal review of state court proceedings"); *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (en banc) (reading the doctrine as "teach[ing] that federal courts have no subject matter jurisdiction to entertain federal constitutional claims that are inextricably intertwined with a state court's ruling in an earlier action, when their adjudication would be tantamount to a review [of] the state court decision." (quotations omitted)); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (noting that the doctrine "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court").

In defining what is meant by "inextricably intertwined," this court has adopted the reasoning of Justice Marshall and of the Eighth Circuit that:

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in

Court. In November 2001, the Michigan state court issued an opinion, which – much like this decision – held, *inter alia*, that Peterson's § 1983 claims were barred by claim preclusion, because they could have been brought as part of the first state court action. *See Peterson Novelties, Inc. & Harold Barman v. City of Berkley & Raymond Anger*, No. 00-027-399-CZ (Oakland County Cir. Ct. Nov. 27, 2001). Detective Anger was a named defendant in that action, and the state court in that case did not distinguish between the City and Detective Anger in its holding; therefore, the state court made a necessary, implicit holding that Detective Anger could take advantage of the claim-preclusive effect of the earlier Michigan court action, even though he was not a named defendant to that action.

The Michigan state law issue of Detective Anger's ability to take advantage of the claim preclusive effect of the earlier state court action having been decided in the affirmative by the Michigan Circuit Court, this court is precluded from reconsidering it. Under Michigan law, issue preclusion precludes the relitigation of an issue in a subsequent cause of action between the same parties or their privies, as long as the earlier proceeding resulted in a valid, final judgment and the same issue was actually litigated and necessarily determined. *See Ditmore*, 625 N.W.2d at 467; *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990) (same). Here we have an identity of parties and the relevant issue being necessarily determined in an earlier proceeding that resulted in a final judgment. We therefore hold that Anger, like the City, is entitled to take advantage of the claim-preclusive effect of the earlier state court action. Accordingly, we affirm the district court's dismissal of Peterson's First and Fifth Amendment claims.

*Peterson's Fourth Amendment Claims*

With respect to Peterson's Fourth Amendment claims alleging malicious prosecution and unreasonable search and seizure, Peterson argues that, pursuant to *Heck v. Humphrey*,

The status of Detective Anger as a defendant is not as clear, since he was not a party to the state court suit. As stated above, under Michigan law, claim preclusion applies to those in privity with parties as well as to parties. *See Sloan v. Madison Heights*, 425 Mich. 288, 295 (1986). However, in order to find privity to exist between a party and non-party, Michigan courts require "both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v. Rogers*, 582 N.W.2d 852, 854 (Mich. Ct. App. 1998) (quotations omitted).

Traditionally, privity was strictly required for application of preclusion; a party could not enjoy the benefit of an earlier action unless they would have been bound by it. *See, e.g., Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 127 (1912). More recently, however, many federal circuits have left behind the traditional mutuality requirement for some defensive uses of claim preclusion. *See, e.g., Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988). In these courts, under certain circumstances, a defendant in a subsequent action can take advantage of the claim-preclusive effect of a prior judgment involving the same plaintiff and different defendants. However, as noted above, this court must look to state law to give substance to the preclusive effect of a state court judgment, *see Migra*, 465 U.S. at 81, and it is not clear, based on a review of the case law, that the state of Michigan permits non-mutual claim preclusion.

For this reason, and because we have no information upon which to base a finding that Detective Anger was in privity with the City in the 1996 state court action, we would be hesitant to hold on our own that Detective Anger may benefit from the claim preclusive effect of the earlier state court action. However, while this case was pending in federal court, Peterson continued to prosecute its claims against both the City and Detective Anger in Oakland County Circuit

substance, anything other than a prohibited appeal of the state-court judgment.

*Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) (quoting *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring))), *amended by* 243 F.3d 234 (6th Cir. 2001); *see also Tropf v. Fid. Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002) (quoting *Catz* for the same proposition); *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492-93 (6th Cir. 2001) (quoting Justice Marshall in *Pennzoil*). Though simple in concept, the doctrine is not easily applied. This is because the doctrine is, as this court has described it, "simple (yet nonetheless confusing)." *Gottfried v. Med. Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998).

The district court in the present case held that the *Rooker-Feldman* doctrine precludes Peterson's claims in federal court because Peterson's federal complaint merely restated many of the allegations Peterson made in the earlier state court proceedings. *See Peterson*, 2000 WL 1279169, at *2. Specifically, the court noted that paragraphs 7-36 of Peterson's amended complaint were almost identical to the allegations made in Peterson's emergency motion to the state court. *Ibid.* Writing that *Rooker-Feldman* applies when an issue was raised and adjudicated in a prior state court proceeding and when claims made in federal court "arise out of the very same incidents" that gave rise to an earlier state court adjudication, the district court held that *Rooker-Feldman* deprived it of subject matter jurisdiction over Peterson's claims. *See id.* at *3 (quoting *Peterson Novelties, Inc. v. Royal Oak Township,* 98-71094, slip op. (E.D. Mich. Dec. 16, 1999)).

In trying to support the district court's disposition on appeal, the City similarly seizes upon the fact that Peterson's federal case and its earlier state court case arise out of a common factual nexus. In other words, according to the City,

the issues in the two cases are "inextricably intertwined" because the same facts that form the basis for Peterson's constitutional claims in federal court formed the basis for Peterson's emergency motion in state court.

On appeal, Peterson argues that the district court erred by focusing on the common set of facts in the two cases, rather than on the issues before the state court. Peterson contends that the state court proceeding was concerned with the validity of the City's seasonal sales licensing ordinance, the manner in which it was applied to Peterson, and what fireworks Peterson could legally sell pursuant to the license it held. On the contrary, Peterson's federal court action focused on the City having allegedly violated Peterson's constitutional rights by illegally seizing Peterson's property, obtaining a false search warrant, and falsely arresting, imprisoning, and maliciously prosecuting Barman.

It is not clear that either the district court decision or the parties place the focus where it should be: on whether the federal court, if it were to adjudicate Peterson's claims, would effectively be acting impermissibly as an appellate court reviewing the state court disposition. It is clear that the state court did not directly decide the claims presented by Peterson's federal complaint. The question, therefore, is whether the claims Peterson now presents to the federal courts are "inextricably intertwined" with the claims decided by the state court. With respect to this question, the reasoning of Justice Marshall and the Eighth Circuit adopted by this court and quoted above makes clear that the *Rooker-Feldman* doctrine operates to deny the federal courts jurisdiction over Peterson's claims if the federal courts could not hold that the City and Detective Anger violated Peterson's constitutional rights without implicitly holding that "the state court wrongly decided the issues before it." *Catz*, 142 F.3d at 293 (quotations omitted). Therefore, in order to determine whether the *Rooker-Feldman* doctrine is properly applicable to this case, we must look to what the state court decided.

relitigation of all claims actually litigated in a prior action between the same parties and those claims arising out of the same transaction that could have been litigated. *See Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 460 Mich. 372, 380 (1999) (holding that preclusion applies "to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." (quotations omitted)); *Ditmore*, 625 N.W.2d at 466 (claim preclusion "bars relitigation of claims that are based on the same transaction or events as a prior suit."); *Jones v. State Farm Mut. Auto Ins. Co.*, 509 N.W.2d 829, 834 (Mich. Ct. App. 1993) (claim preclusion "bars claims arising out of the same transaction that plaintiff could have brought but did not, as well as those questions that were actually litigated.").

It is obvious that the state court in the present case decided the issues before it on the merits, and that the resultant decree was final. It is equally clear that Peterson's First Amendment retaliation claim and Fifth Amendment deprivation of property claim arose out of the same transaction as did Peterson's state court action; Peterson's emergency motion in state court sought a contempt finding and damages against the City for the same acts that Peterson now alleges violated its constitutional rights. Peterson could very well have brought its First, Fifth, and Fourteenth Amendment claims in that state court proceeding. Finally, it is clear that Peterson[2] and the City of Berkley were parties to the state court action. The First and Fifth Amendment claims as between these parties are therefore clearly barred by claim preclusion.

---

[2]Though we note that Barman was not a named plaintiff in the state court suit against the City, claim preclusion will nonetheless bar his claims, because his brief to this court makes clear that he is the owner of the named plaintiff in the state court suit, Peterson Novelties, Inc. *See* Appellant's Brief at 5. In neither his filings to the district court nor to this court has Barman contended that he was not in control of Peterson at the time of the state court action.

Peterson's case on the basis of the *Rooker-Feldman* doctrine as applicable to the state court's July 3 order.

## III

Having found the *Rooker-Feldman* doctrine inapplicable, we could merely vacate the district court's dismissal of Peterson's action. However, it is well settled that this court may affirm a district court's decision on any grounds supported by the record. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). With this in mind, we affirm the district court's dismissal of Peterson's claims on other grounds.

### Peterson's First and Fourteenth Amendment Claims

We hold that claim preclusion bars consideration of Peterson's First and Fifth Amendment claims, because those claims could have been brought in Peterson's earlier state court action.

The preclusive effect of a state court judgment is determined by that state's law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Under Michigan law, there are four requirements for claim preclusion: (1) the prior action must have been decided on the merits; (2) the resultant decree in the prior action must have been a final decision; (3) the issues in the second action must have been either resolved or capable of resolution in the first; and (4) both actions must involve the same parties or their privies. *See Ditmore v. Michalik*, 625 N.W.2d 462, 466 (Mich. Ct. App. 2001); *Baraga County v. State Tax Comm'n*, 622 N.W.2d 109, 111 (Mich. Ct. App. 2000), *reversed on other grounds*, 645 N.W.2d 13.

As is evident from a reading of the third requirement, Michigan law defines claim preclusion broadly to preclude

If the state court had, in the course of its opinion, held that the City had not acted illegally with respect to its search, seizure, and prosecution of Peterson's property and employees, then Peterson's federal claims could succeed "only to the extent that the state court wrongly decided the issues before it." *Ibid.* However, the July 3 state court opinion does not discuss the legality of the City's actions; it merely reaffirms the validity of the court's earlier order while silently refusing to hold the City in contempt of that order. Therefore, the district court in the present case could give Peterson relief on its federal claims without effectively finding that the state court wrongly decided any issues before it. For this reason, the *Rooker-Feldman* doctrine does not apply to bar the court's consideration of Peterson's claims based on the state court's 1996 order.

The City would have this court draw an inference from the circumstances that Peterson asked the state court to hold the City in contempt of its May 9 order and the court silently refused. Since the May 9 order set the legal parameters for Peterson's business, if the prosecution, arrest, and imprisonment that Peterson challenges were illegal, it was because Peterson was acting within the bounds of that order, the City and Detective Anger knew it, and they acted in the face of it. Therefore, according to this argument, if the state court decided that the City had not violated the order, the federal court must implicitly be ruling that the state court was wrong in order to provide Peterson relief, and this is precisely what the *Rooker-Feldman* doctrine disallows.

The problem with this argument is that the state court did not clearly hold that the City did not violate its May 9 order. The state court certainly *could* have found the City in violation of its May 9 order, and it declined the opportunity to do so. However, the July 3 state court order is not terribly explanatory, and the status of the City's compliance with the

May 9 order is simply not clear.[1]  It would therefore be entirely possible for the district court in this case to provide Peterson federal relief not predicated upon a conviction that the state court was wrong, and for that reason the *Rooker-Feldman* doctrine does not preclude the court's adjudication.

The district court found support for its holding that the *Rooker-Feldman* doctrine applied in this case in another Eastern District of Michigan fireworks case – *Burda Bros., Inc. v. Walsh*, 61 F. Supp. 2d 648 (E.D. Mich. 1999). However, that case actually provides support for the opposite result. The *Peterson* court quoted the *Burda Bros.* court as applying *Rooker-Feldman* where "the party against whom the doctrine is being applied had the opportunity to raise the issue [in] a prior state court proceeding, and the issue was adjudicated in the prior state court proceeding." *Peterson*, 2000 WL 1279169, at *2 (quoting *Burda Bros.*, 61 F. Supp. 2d at 659).  However, the district court in *Burda Bros.* only applied the doctrine to one set of the Burdas' claims – their contention that the Michigan fireworks law was preempted by federal regulation. *See Burda Bros.*, 61 F. Supp. 2d at 658-59.  The *Burda Bros.* court noted that the Burdas had previously filed in state court for a declaratory judgment to that effect and had received the injunction, only to have it overturned by the Michigan Court of Appeals.  *Ibid.* Therefore, in the *Burda Bros.* case, the *Rooker-Feldman* doctrine did apply, because the federal district court could not hold that the fireworks statute was preempted, without

---

[1]In the course of the July 3 order, the state court held unconstitutionally vague a portion of the Michigan fireworks statute. It is therefore possible that the state court refused to hold the City in contempt or award damages to Peterson because, in seizing the fireworks it believed to be illegal and arresting the Peterson employees for selling them, the City was operating pursuant to that part of the fireworks statute that the state court had just found unconstitutional. Alternatively, the court might have found the City to have violated its May 9 order but merely decided not to issue sanctions.

holding that the Michigan Court of Appeals was incorrect in holding that it was not preempted.

There is an unpublished case of this circuit that is similarly instructive.  In that case, this court vacated a district court's application of the *Rooker-Feldman* doctrine in a situation where a plaintiff had filed in state court a suit alleging improper conduct by a city, and the state court relied on a procedural matter to refuse to consider the propriety of the city's conduct. *See Wojcik v. City of Romulus*, No. 97-2236, 1999 WL 238662 , at *2 (6th Cir. April 13, 1999).  In that circumstance, this court held that the plaintiffs were not effectively seeking review of the state court decision, because the state court did not consider the relevant issue. *Ibid.*  In the present case, it is not clear from the court's order whether and to what extent the state court considered the issues of the legality of the City's actions and whether the City acted in contempt of the court's May 9 order; however, it is clear that the district court's resolution of the issues before it would not implicate the state court judgment.

In a recent case, this court cautioned district courts against dismissing cases on the basis of *Rooker-Feldman* abstention in situations where the questions presented to the district court do not implicate issues decided by an earlier state court. *See Anderson,* 266 F.3d at 495.  That case did not present the question we are faced with today, so this court in *Anderson* noted merely that "a serious question" would have been presented about *Rooker-Feldman* applicability in such a case. *Ibid.*  However, this court's adoption of Justice Marshall's rationale in *Pennzoil*, that a federal claim is "inextricably intertwined" with a state court judgment and thus implicates *Rooker-Feldman* when "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," *see Tropf*, 289 F.3d at 937; *Anderson*, 266 F.3d at 492-93; *Catz*, 142 F.3d at 293, makes clear that if the federal claim can succeed without calling into question the correctness of the state court judgment, *Rooker-Feldman* does not apply. For this reason, the district court erred in dismissing