*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0420P (6th Cir.)
File Name: 03a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

No. 01-5956

SUSAN STEMLER,
　　　　*Plaintiff-Appellee,*
WILLIAM CHIPMAN,
Administrator of the Estate of
Conni Black,
　　　　*Plaintiff-Appellant/*
　　　　*Cross-Appellee,*
RANDY BLACK, Legal
Guardian of Shianne Black,
　　　　*Intervenor-Appellant/*
　　　　*Cross-Appellee,*

*v.*

FLORENCE, City of Florence,
　　　　*Defendant-Appellee,*
BOBBY JOE WINCE, in his
official capacity as an Officer
of the Florence Police
Department; JOHN DOLAN, in
his official capacity as an
Officer of the Florence Police
Department; THOMAS
DUSING, in his official
capacity as an Officer of the

Nos. 01-5956/6205

Florence Police Department,
　　　　*Defendants-Appellees/*
　　　　*Cross-Appellants,*
RON KENNER, in his official
capacity as Boone County
Sheriff,
　　　　*Defendant.*

————————

No. 01-6205

SUSAN STEMLER,
　　　　*Plaintiff-Appellee,*
RANDY BLACK,
　　　　*Intervenor-Appellee/*
　　　　*Cross-Appellant,*

*v.*

FLORENCE, City of Florence,
　　　　*Defendant,*
BOBBY JOE WINCE, in his
official capacity as an Officer
of the Florence Police
Department; JOHN DOLAN, in
his official capacity as an
Officer of the Florence Police
Department; THOMAS
DUSING, in his official
capacity as an Officer of the
Florence Police Department,
　　　　*Defendants-Appellants/*
　　　　*Cross-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
Nos. 94-00062; 95-00014—William O. Bertelsman,
District Judge.

Argued: December 5, 2002

Decided and Filed: December 2, 2003

Before: BOGGS, Chief Judge; and SILER and GIBBONS,
Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Eric C. Deters, ERIC C. DETERS & ASSOCIATES, Ft. Mitchell, Kentucky, for Plaintiffs. Jeffrey C. Mando, ADAMS, STEPNER, WOLTERMANN & DUSING, Covington, Kentucky, for Defendants. **ON BRIEF:** Eric C. Deters, ERIC C. DETERS & ASSOCIATES, Ft. Mitchell, Kentucky, for Plaintiffs. Jeffrey C. Mando, ADAMS, STEPNER, WOLTERMANN & DUSING, Covington, Kentucky, Hugh O. Skees, ROUSE, SKEES, WILSON & DILLON, Florence, Kentucky, David Whalin, LANDRUM & SHOUSE, Louisville, Kentucky, for Defendants.

_____

**OPINION**

_____

BOGGS, Chief Judge. Appellant/cross-appellee William Chipman, administrator of the estate of Conni Black, and intervenor-appellant/cross-appellee Randy Black appeal the

district court's order granting summary judgment for the defendants in this civil action arising out of an encounter between Conni Black and Susan Stemler, on the one hand, and police officers from the City of Florence, Kentucky and Boone County, Kentucky. Appellees/cross-appellants Bobby Joe Wince, John Dolan, and Thomas Dusing appeal the denial of summary judgment on Susan Stemler's claim of violation of equal protection. Wince appeals the denial of summary judgment on Stemler's claims of fabrication of evidence and excessive force.

This case arises out of an incident that occurred on February 19, 1994. We have reviewed this case on a previous appeal. The relevant facts are described at length in *Stemler v. Florence*, 126 F.3d 856 (1997). Briefly, Black was killed in a car accident shortly after police officers allegedly removed her from Stemler's car and placed her in the truck of her boyfriend, Steve Kritis. Both Black and Kritis had been drinking heavily, and after an altercation between them at a bar, Black left with Stemler in Stemler's car. Kritis then began to chase the women on the streets of Florence before both the car and the truck were stopped by the police after a concerned citizen alerted them to the situation. Stemler was arrested for driving under the influence. Witnesses say that all the police officers present repeated Kritis's assertion that Stemler was a lesbian to each other and to others present. No police officer ever checked Kritis for intoxication or asked him to leave his truck. Black was either escorted or carried from Stemler's car to the passenger seat of Kritis's truck. Kritis then drove away and turned onto the northbound lanes of I-75. According to Kritis, Black, who had passed out, woke up and began to hit Kritis. He began to hit back and lost control of the truck. The truck swerved and collided with the guardrail. Black was partially ejected from the passenger-side window. Her arm was completely severed from her body and her head was split into two parts by some part of the guardrail.

## I. The Claims

### A.   Chipman's claim

On March 7, 1994, William Chipman, the administrator of the estate of Conni Black, filed a wrongful death action in the Boone County Circuit Court against Florence police officers Dusing, Dolan, and Wince; Boone County police officers Rob Reuthe and Chris Alsip; the City of Florence; and Ron Kenner, the Boone County Sheriff. The Boone County Circuit Court entered summary judgment on behalf of the defendants on Chipman's wrongful death claim. *Chipman v. City of Florence*, No. 94-CI-00202 slip op. at 4 (Boone Co., Ky., Cir. Ct. Apr. 2, 1996). The Kentucky Court of Appeals reversed the Circuit Court. *Chipman v. City of Florence*, No. 1996-CA-001287-MR (Ky. Ct. App. Nov. 25, 1998). The Kentucky Supreme Court then reversed the Court of Appeals and reinstated the summary judgment ordered by the Boone County Circuit Court. *City of Florence v. Chipman*, 38 S.W. 3d 387 (Ky. 2001).

Chipman also filed a complaint in federal court against the same defendants on March 31, 1994.[1] The complaint alleged that the defendants were liable under 42 U.S.C. § 1983 for Black's wrongful death because they had displayed deliberate indifference by forcing her into Kritis's car.[2]

Chipman's federal claims were dismissed by the district court in 1994. The district court granted the individual officers' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, on the ground of qualified immunity. The district court also granted the

---

[1]We treated the complaint against Kenner as a suit directly against Boone County. *Stemler*, 126 F.3d at 864 n.8.

[2]This claim will be referred to as "the substantive due process claim."

motions for summary judgment of Florence and Boone County. *Chipman v. City of Florence*, 858 F. Supp. 87 (E.D. Ky. 1994), *reconsideration denied on amended complaint*, 866 F. Supp. 332 (E.D. Ky. 1994).

On appeal, we upheld the district court's order granting summary judgment to the municipal defendants, Florence and Boone County. *Stemler*, 126 F.3d at 866. However, we reversed the district court's dismissal of Chipman's claims against the individual officers. We held that Chipman had pled facts sufficient to maintain her substantive due process claim against the individual officers. *Id.* at 870. The only state court decision prior to our decision was the Boone County Circuit Court decision awarding judgment to the defendant officers, holding that Black was not in custody when the pickup struck the guardrail and that none of the state actors were the direct cause of her death on the highway. We stated in *Stemler* that "[w]hile these findings are entitled to preclusive effect, they are irrelevant to the merits of her substantive due process claim." *Id.* at 870 n.12. The case was remanded to the district court for further proceedings consistent with the opinion.

Shortly after the opinion issued, Randy Black was granted permission to intervene on behalf of Conni Black's minor child, Shianne Black, to bring a claim of loss of parental consortium. At about the same time, the federal district court held the case in abeyance pending a decision by the Kentucky Supreme Court on appeal of the Boone County Circuit court's order entering summary judgment in favor of defendants and the Kentucky Court of Appeals reversal of that order, which was issued February 22, 2001. Chipman later reached a settlement with the Boone County officers. In June 2001, the district court granted the officers' motion for summary judgment on Chipman's substantive due process claim, and Shianne Black's claim for loss of parental consortium. The district court found that the decision of the Kentucky Supreme Court barred their claims under the doctrine of issue

preclusion. The issue that the district court found could not be relitigated was whether Black was in "custody" when she got into Kritis's car because, according to the district court, the Kentucky Supreme Court had held that Black was never in custody.

## B.    Stemler's Claims

Susan Stemler filed a federal complaint, pursuant to 42 U.S.C. § 1983, against officers Wince, Dolan, Dusing, and the City of Florence. The complaint alleged claims of excessive force, wrongful arrest, malicious prosecution, and violation of equal protection on the bases of sex and sexual orientation. The district court granted the officers' Rule 12(b)(6) motions to dismiss on the ground of qualified immunity. The district court then consolidated her case with Chipman's and awarded summary judgment to Florence. The federal district court then entered an order granting Stemler's motion for voluntary dismissal of her excessive force claim against Wince. This voluntary dismissal was entered pursuant to an agreement between the parties to dismiss the claim so that an appeal could proceed in this court. The agreement allowed her to bring her claim again should she be successful upon appeal.

As Chipman did, Stemler had also brought similar claims in Kentucky state court. She raised state-law claims of malicious prosecution, false arrest, abuse of process, assault and battery, false imprisonment, and negligent or intentional infliction of emotional distress. *Stemler v. Florence*, No. 94-CI-00459. The Boone County Circuit Court held that she was precluded from prosecuting all of her claims, except for assault and battery. *See Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997). There was ample evidence constituting probable cause for her arrest. This barred her false arrest and malicious prosecution claim. As the defendants were police officers, the court found that there was no distinction between her claims of false arrest and false

imprisonment. It also found that her abuse of process claim was barred based on the probable cause finding, that the officers had no improper motive in arresting her, and that a state prosecutor independently had made the prosecutorial decisions in her criminal case. As for her claims of negligent or intentional infliction of emotional distress, the court found that under Kentucky law, there is no viable cause of action for these torts when she had raised essentially identical claims under traditional torts as discussed above. Finally, the court determined that there was a genuine issue of material fact with respect to her assault and battery claim against Wince, but not against Dusing and Dolan. Stemler later voluntarily dismissed this claim. The Kentucky Court of Appeals affirmed the grant of summary judgment. Stemler did not pursue an appeal.

Upon appeal of the district court decision to this court, we affirmed the grant of summary judgment in favor of the City of Florence. *Stemler*, 126 F.3d at 866. We also affirmed the dismissal of her false arrest and malicious prosecution claims because the Boone County Circuit Court's finding that there had been probable cause to arrest and prosecute Stemler precluded relitigating that issue in this court. *Id.* at 871-72. We noted that although Stemler seemed to be asserting a claim that Wince had falsified evidence against her, and that the state court's finding of probable cause would not preclude her from prosecuting this claim, she had failed to properly plead it. *Id.* at 872. We stated that she would be free to file a new complaint against Wince raising that claim. *Ibid.* Finally, we reversed the dismissal of Stemler's equal protection claim of selective prosecution against the officers, holding that the allegations in her complaint were sufficient to state a claim. *Id.* at 874.

After our opinion in *Stemler* was issued, Stemler amended her complaint to allege that Wince fabricated the blood

sample evidence used in her DUI trials.[3]  As it did in Chipman's case, the district court held Stemler's case in abeyance pending final judgments in the state court proceedings.  In June 2001, the district court denied the officers' motion for summary judgment on Stemler's claims of denial of equal protection based on selective prosecution, and Wince's motion for summary judgment on her claims of falsification of evidence, and excessive force.  The district court noted that none of these claims actually had been litigated in state court.  It stated that while it might agree with the defendants that Stemler could and should have brought these claims in state court, our opinion in *Stemler* had implied that claim preclusion did not apply.  The court further stated that our holding in *Stemler* stated that she could proceed with these claims, and that the "law of the case" would be violated if it did not permit her to do so.

## II.  Chipman's substantive due process claim

Chipman argues that our resolution of the custody issue in his favor in *Stemler* should have had preclusive effect on the Kentucky state courts.  He argues that our opinion's holdings constituted the "law of the case" and the district court erred in applying the doctrine of issue preclusion based on the state court proceedings.  The officers argue that the district court was correct in deciding that issue preclusion barred the relitigation of the issue of custody.  Alternatively, they argue that Chipman's substantive due process claim is barred from further litigation under the *Rooker-Feldman* doctrine, or under the doctrine of claim preclusion.

We review *de novo* a district court's decision with regard to issue preclusion or claim preclusion.  *Heyliger v. State*

---

[3]Stemler was twice tried in Boone County District Court on the DUI charge.  The first trial ended in a hung jury.  She was acquitted at the end of her second trial.

*Univ. and Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851 (6th Cir. 1997); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1848 (1996).  When deciding whether to afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *Heyliger*, 126 F.3d at 851-52.

Under Kentucky law, "[c]laim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Kentucky Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998).  "Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Ibid.*

### A.  Issue Preclusion

In order for issue preclusion to apply in Kentucky, (1) the issue in the second case must be the same as the issue in the first case, (2) the issue must have been actually litigated, (3) the issue must have been actually decided, and (4) the decision on the issue in the prior action must have been necessary to the court's judgment. *Ibid.*  The district court found that all four factors were met when the Kentucky Supreme Court resolved Chipman's state claims.

In order for Chipman to prevail in the Kentucky state courts, the Kentucky Supreme Court stated that he had to show "the existence of a duty and unless a special relationship was present, there is no duty owing from any of the police officers . . . ." *Chipman*, 38 S.W. 3d at 392.  The court went on, stating that "[i]n order for the special relationship to exist, two conditions are required: 1) the victim must have been in state custody or otherwise restrained by the state at the time

the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor." *Ibid.* The court held that "[t]here is no evidence from which it can be ascertained that Black was in state custody or otherwise restrained by the police at the time the pickup truck struck the guardrail with the fatal result. In addition, there is no evidence to support a claim that the conduct which caused the pickup truck to leave the roadway and strike the guardrail was the result of the actions of the police officers." *Ibid.*

The Kentucky Supreme Court also stated that Black was *never* in custody. *Id.* at 393. This is precisely the issue that is relevant in a § 1983 action. In order to prevail on the § 1983 claim, Chipman needs to show that the defendant officers "violated substantive due process by placing [Black] at risk of harm from a third party . . . ." *Stemler*, 126 F.3d at 867. The court must first determine whether "the plaintiff and the state actors had a sufficiently direct relationship such that the defendants owed [Black] a duty not to subject her to danger," and then "the court must also conclude that the officers were sufficiently culpable to be liable under a substantive due process theory." *Ibid.* As to the first part, the relevant inquiry is whether Black was in custody at the time the officers allegedly forced her into Kritis's truck.

First, the Kentucky Supreme Court stated that there was no evidence in the record to support a finding that Black was ever in custody, the same issue that is necessary to Chipman's federal claim. Second, the custody issue was actually litigated in the state courts: in the Boone County Circuit Court, the Kentucky Court of Appeals and the Kentucky Supreme Court. The Kentucky Supreme Court found that there was no evidence to support a finding that Black was ever in custody in the context of deciding the appeal of a summary judgment motion. A summary judgment order is a decision on the merits. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Third, the issue was actually decided by the Kentucky Supreme Court. The

court made an explicit statement that there was insufficient evidence to support a finding that Black was in custody.

However, the Kentucky Supreme Court's statement that she was never in custody was not necessary to its judgment. The Boone County Circuit Court held that there was no genuine issue of material fact regarding whether Black was in custody at the time the pickup struck the guardrail – the point at which the injury-producing act occurred. Specifically, it stated she was not in custody at this point. This was the only holding necessary for the affirmance of the Boone County Circuit Court's judgment. As we noted in discussing this lower court decision in *Stemler*, the holdings of the state court on this issue are entitled to preclusive effect. Nonetheless, this precise issue is irrelevant to the substantive due process claim.

As the Kentucky Court of Appeals (now the Kentucky Supreme Court) stated in *Sedley v. City of West Buechel*, 461 S.W.2d 556, 558 (Ky. 1971):

> The general rule is that a judgment in a former action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, and is *not conclusive as to matters* which were immaterial or *unessential to the determination* of the prior action or which were not necessary to uphold the judgment.

(Emphasis added).

As the Kentucky Supreme Court correctly stated, our statements in *Stemler* regarding whether Black was in custody were dicta, as the only issue before us at that point was the sufficiency of the allegations in the complaint. Similarly, the statements of the Kentucky Supreme Court regarding whether Black was *ever* in custody are dicta, as they are not necessary

to the state courts' disposition of the case. The actual holding of the Kentucky Supreme Court reads:

> In order for a claim to be actionable in negligence, there must be the existence of a duty and unless a special relationship was present, there is no duty owing from any of the police officers to Black to protect her from crime or accident. In order for the special relationship to exist, two conditions are required: 1) the victim must have been in state custody or otherwise restrained by the state *at the time the injury producing act occurred*, and 2) the violence or other offensive conduct must have been committed by a state actor. Neither of these factors can be found from the undisputed material facts in this case. There is no evidence from which it can be ascertained that Black was in state custody or otherwise restrained by the police *at the time the pickup truck struck the guardrail with the fatal result*. In addition, there is no evidence to support a claim that the conduct which caused the pickup truck to leave the roadway and strike the guardrail was the result of the actions of the police officers.

*City of Florence v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001) (emphasis added and citations omitted).

The Kentucky Supreme Court would have reached the same result if it had found that Black was in custody at the time she entered Kritis's truck, so long as it found she was not in custody at the time the truck hit the guardrail.

The district court erred in finding that issue preclusion barred Chipman's substantive due process claim.

## B. Claim Preclusion

The defendant officers also argue that claim preclusion should bar Chipman's claim against them. Claim preclusion bars further litigation under Kentucky law when: (1) there is identity of the parties; (2) there is identity of the causes of action; and (3) the action has been resolved on the merits. *Yeoman*, 983 S.W.2d at 465. *Yeoman* also stated that "[f]or claim preclusion to apply, the subject matter of the subsequent suit must be identical." *Ibid.*

In *Barnes v. McDowell*, 848 F.2d 725 (6th Cir. 1988), we stated that "Kentucky courts do not apply the doctrine of claim preclusion in a subsequent suit involving facts already at issue in another action when the causes of action in the two proceedings are not the same." *Id.* at 730. A district court, interpreting Kentucky law, stated:

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, *the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.*

*Presbyterian Child Welfare Agency of Buckhorn v. Nelson County Bd. of Adjustment*, 185 F. Supp. 2d 716, 720 (W.D. Ky. 2001) (quoting *Louisville v. Louisville Professional Firefighters Ass'n*, 813 S.W.2d 804, 807 (Ky. 1991)).

While there is identity of the parties, and the action was resolved on the merits, Chipman's claim is not barred, as it is not the same claim as in state court. His claim in the state courts was for wrongful death, which is a negligence claim. This is not the same cause of action as the one he brought in the federal court, a claim of violation of Black's substantive due process rights. It is indeed true that this claim could have been brought in state courts. However, under the Kentucky law of claim preclusion, this does not matter, as there is no identity of the causes of action. *Yeoman*, 983 S.W.2d at 465. Chipman's federal claim is not barred by claim preclusion.

## C.  *Rooker-Feldman*

The defendant officers also argue that the federal district court lacked jurisdiction to consider Chipman's claim under the *Rooker-Feldman* doctrine. They argue that Chipman's federal suit is an attempt to appeal a state court decision to the federal courts.

The doctrine gets its name from two Supreme Court cases. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), held that the power to hear appeals from state court judgments is exclusively held by the United States Supreme Court. The Supreme Court held in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), that federal district courts do not have jurisdiction to hear challenges to certain state-court decisions. The *Rooker-Feldman* doctrine states that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties, Inc. v. Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). In defining "inextricably intertwined," we have adopted the reasoning that:

[t]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to

the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* at 391 (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)). In *Peterson Novelties*, we held that the *Rooker-Feldman* doctrine was inapplicable to claims that the state court did not address or rule upon even though the federal claims arose out of the same nucleus of facts. *Id.* at 391-93. Therefore, the question is whether this court could hold that the officers violated Black's constitutional rights without implicitly holding that the state court wrongly decided the issues before it. *Id.* at 393.

This court discussed the *Rooker-Feldman* doctrine and its frequent conflation with claim and issue preclusion in *Hutcherson v. Lauderdale County*, 326 F.3d 747 (6th Cir. 2003). This court stated that Seventh Circuit case law provided a useful way to determine which doctrine to apply:

In order to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, . . . res judicata may apply, but Rooker-Feldman does not . . . .

*Id.* at 755 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996)).

As Chipman is not directly challenging the state court's judgments in federal court, the doctrines of claim and issue preclusion are more properly applied to this case. However, in any case, the *Rooker-Feldman* doctrine does not apply. The Kentucky Supreme Court's discussion of whether Black was ever in custody was dicta, and therefore any finding by the federal court that Black was in custody at some point during the encounter would not implicitly hold that the state court improperly decided *the issues before it*. The issue of Black's custody before the truck hit the guardrail was not an issue that was salient before the Kentucky court.

The district court does have jurisdiction to hear Chipman's substantive due process claim.

## III. Stemler's Claims

### A. Equal Protection Claim

The defendants argue that Stemler's equal protection claim is barred by claim preclusion, issue preclusion, and the *Rooker-Feldman* doctrine. The district court, although inclined to rule that her claim was barred by claim preclusion, instead decided that this court's decision in *Stemler* precluded the application of any of those doctrines. We first note that the district court was not required to abstain from analyzing Stemler's claims under the claim preclusion doctrine because of our previous opinion. Our opinion was issued while Stemler's appeal was pending with the Kentucky Court of Appeals. We stated that *at that point*, claim preclusion did not yet apply to her claims before the federal courts. We nowhere said that claim preclusion would never apply.

The defendant officers argue that the Kentucky Court of Appeals decision conclusively decided the question of whether they had acted with improper motive in arresting her. The Court of Appeals stated that "[a]lthough the officers may have been crude during Stemler's arrest, we agree with the

circuit court that Stemler cannot establish that they acted with an improper motive." *Stemler v. City of Florence*, No. 1996-CA-001318-MR at 23. The court made this statement in the context of discussing the propriety of summary judgment regarding Stemler's abuse of process claim. One of the essential elements of that tort is an ulterior purpose. *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W. 2d 765, 766 (Ky. Ct. App. 1980). It was one of several findings of fact that supported the granting of summary judgment in favor of the defendants.

Stemler argues that our statement in our opinion in *Stemler* that "the record evidence supports a finding" that the officers chose to arrest her because they believed her to be a lesbian should have had preclusive effect on the Kentucky state courts. However, this statement was dicta. We reversed the district court's dismissal of her claim on a 12(b)(6) motion. Thus the only question before our court was whether her complaint adequately stated an equal protection claim. A dismissal pursuant to 12(b)(6) "is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). That judgment does not preclude a later summary judgment motion, arguing that the plaintiff *in fact* could not show such evidence. In state court, the claim was being considered for summary judgment purposes. A summary judgment order is a decision on the merits. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Thus the issue was actually litigated in the state courts. And, as the state court made an explicit finding that the officers had no improper motive, the issue was actually decided.

In order to maintain a claim of selective prosecution (the basis of Stemler's equal protection claim), the plaintiff must prove that a state actor initiated the prosecution with a discriminatory purpose. This is the same issue as the ulterior purpose issue in Stemler's state claim of abuse of process.

And finally, the issue was necessary to the resolution of the state claim. Thus, the state court's finding that the officers did not have an improper motive in arresting Stemler has preclusive effect on relitigating that issue in the federal courts.

Because Stemler's equal protection claim is barred by issue preclusion, the district court should have granted summary judgment to the officers on that claim.

## B.   Excessive Force

Stemler's federal claim of excessive force and her state claim of assault and battery against Wince were voluntarily dismissed so that she could appeal unfavorable lower court decisions on other claims. Wince first argues that Stemler has never taken any action to revive her federal claim. However, Stemler's Second Amended Complaint was accepted by the district court on January 13, 1998. Her Second Amended Complaint incorporated by reference her initial complaint and her First Amended complaint, which included the excessive force claim. Furthermore, Wince does not explain why he did not make this argument when he moved the district court for summary judgment on this claim, and why the district court denied his summary judgment motion without ever addressing this issue.

Wince next argues that the voluntary dismissal agreement bars Stemler from reviving her excessive force claim because it bars her from reviving her assault and battery claim. The agreement stated that if her appeal to the state appellate court on her other state claims was unsuccessful, then her assault and battery claim could not be revived, and vice versa. It similarly stated that if her appeal to the federal appellate court was unsuccessful, then her excessive force claim could not be revived, and vice versa. He argues that because both claims rely on the same facts and elements of proof, the dismissal of

her state law claims bars her from reviving her assault and battery claims.

First, a voluntary dismissal of a claim is not a judgment on the merits. Ky. R. Civ. P. 41.01. While Stemler's assault and battery claim was dismissed with prejudice against Dolan and Dusing, the state court did not grant summary judgment to Wince, and issue preclusion does not apply to her claim against Wince. Second, the agreement itself does not bar her from bringing her federal claim. As she was not successful on appeal in the state courts, the agreement would seem to bar her from bringing her assault and battery claim again in state courts. However, the agreement addressed her federal and state claims separately. The agreement did not say that if she was unsuccessful in the state courts that she was barred from bringing her federal excessive force claim again. The agreement that bars her from bringing her state assault and battery claim is not a judgment for the purposes of issue preclusion, as Wince seems to argue.

Wince next argues that the *Rooker-Feldman* doctrine barred the district court from considering Stemler's claims since any decision favorable to her would have been an impermissible review of issues decided adversely to her in the Kentucky state court. He also argues that the claim preclusion doctrine bars her from relitigating this claim in the federal courts as well. We will discuss the application of these doctrines below in conjunction with Stemler's other outstanding claim.

### C.  The application of claim preclusion and the *Rooker-Feldman* doctrines to Stemler's Fabrication of Evidence and Excessive Force Claims

Wince argues that Stemler's excessive force and fabrication of evidence claims should be barred by claim preclusion and the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine, as previously noted, states that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties*, 305 F.3d at 390.  The question for this court is whether a federal court can rule in Stemler's favor on her federal claims without implicitly holding that the state courts wrongly decided the issues before them.  *Id.* at 393.

The state courts adjudicated several of Stemler's claims. As noted above, Stemler's claims of malicious prosecution and false arrest and imprisonment were dismissed on summary judgment because the state court held that there was no genuine issue that probable cause existed for her DUI arrest.  Her claims of intentional or negligent infliction of emotional distress and outrage were dismissed on summary judgment because Kentucky law holds that if a claimant raises claims under traditional torts that allow recovery for emotional distress, the claimant cannot raise claims of intentional or negligent infliction of emotional distress or outrage.  The Boone County Circuit Court found that there was a genuine issue of material fact as to her assault and battery claim against Wince.

Except for the decision refusing to dismiss her assault and battery claim against Wince, the Kentucky state courts never considered or ruled on any elements of the claims of fabrication of evidence or excessive force, nor did they address any facts or issues regarding these claims.  The state

courts confined themselves to the issues of probable cause and the motive for Stemler's arrest.  The district court could rule in Stemler's favor without even implicitly holding that the Kentucky courts wrongly decided the issues before them. The *Rooker-Feldman* doctrine does not apply to these claims, and the district court has jurisdiction to hear them.

Wince also argues that claim preclusion would bar Stemler from bringing these claims in federal court, because as she could have brought them in state court.  However, as discussed above, the Kentucky law of claim preclusion only bars bringing the *same* cause of action twice. Stemler's claims for falsification of evidence and excessive force could have been brought in state court and were not.  However, under Kentucky law, as she did not bring identical causes of action in state court, she is not barred from bringing them in federal court. *Yeoman*, 983 S.W. 2d at 465.  The district court did not err when it decided that claim preclusion did not apply to these claims.

## IV.  Conclusion

In No. 01-5956, we REVERSE the grant of summary judgment to the defendants on Chipman's substantive due process claim.  In No. 01-6205, we REVERSE the denial of summary judgment with regard to Stemler's equal protection claim.  We AFFIRM the denial of summary judgment with regard to Stemler's excessive force and falsification of evidence claim.  Both cases are REMANDED to the district court for further proceedings consistent with this opinion.