**John R. ACKERMANN, Plaintiff,**

v.

**Robert W. DOYLE, Supreme Court Justice, in his official capacity, and Mary M. Werner, District Administrative Judge, in her official capacity, Defendants.**

**No. CV 98–4664(ADS).**

United States District Court, E.D. New York.

April 20, 1999.

---

John R. Ackermann, New Bern, NC, pro se.

Office of the New York State Attorney General, Mineola, NY, by Dorothy Oehler

Nese, Assistant Attorney General, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises out of the *pro se* plaintiff's dissatisfaction with the defendants' handling of his case in the New York State Supreme Court, Suffolk County. That case—which the plaintiff describes as a "negligence" lawsuit— stemmed from allegations that the Town of Riverhead illegally seized and destroyed the plaintiff's personal property, namely, a bronze storage box which the plaintiff characterizes as a family heirloom valued at several thousands of dollars. At issue is the defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties appeared before the Court for oral argument on April 16, 1999. This written opinion follows.

## I. BACKGROUND

The following facts are derived from the Complaint, and from several of the exhibits attached to the defendants' moving papers, including Decisions, Orders and filings in the plaintiff's related state and federal cases.

Initially, the Court notes that during oral argument, the plaintiff objected to the Court's consideration of these exhibits on the ground that they were outside the scope of a motion to dismiss. However, when considering a motion to dismiss the complaint, the district court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, *as well as any matters of which judicial notice may be taken.*" *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995) (emphasis added). Federal Rule of Evidence 201(b) provides, in pertinent part, that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." In the Court's view, the Decisions, Orders and filings in the plaintiff's related state and federal cases are capable of determination by sources whose accuracy cannot reasonably be questioned. It also is entirely proper for this Court to take judicial notice of the actions taken in the related state and federal court actions " 'to establish the fact of such litigation and related filings.' " *Liberty Mutual Insurance Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

### A. The New York State Lawsuit (the "State Case")

In or about March 1993, the plaintiff, John R. Ackerman ("Ackerman" or the "plaintiff") filed a *pro se* lawsuit in the New York State Supreme Court, Suffolk County, raising a "negligence" claim against the Town of Riverhead. According to the Complaint filed in the State Case, the "negligence" claim arose from an incident in June 1987, when a Town of Riverhead Police Officer "entered the plaintiff's domicile ... and, without benefit of a search warrant, or permission or knowledge of this plaintiff, unlawfully and negligently seized the plaintiff's personal property, namely, [a] metal storage box ..." The Complaint in the State Case further alleges that in 1990, the Town of Riverhead destroyed the box, and that the plaintiff "had no knowledge that the metal storage box .. had been in [the Town's] custody" and destroyed until July 1992, when he was informed of what had transpired by the Suffolk County District Attorney's Office.

According to the plaintiff, "[h]aving complied with applicable statutes and rules of the court, and having paid all court fees, this case was certified for trial on March 7, 1995 by the Hon. W. Bromley Hall, Justice

of the Supreme Court, Suffolk County, New York."

However, on April 10, 1996, the defendant Honorable Robert W. Doyle "marked this plaintiff's case off the Supreme Court, Suffolk County, New York, trial calendar solely because said plaintiff failed to appear for calendar call on that date." According to the plaintiff, his "failure to appear was solely and only the result of the failure of the State Supreme Court, Suffolk County, New York to notify the plaintiff herein of the calendar call."

On May 1, 1996, the plaintiff states that he filed a motion to restore his State Case to the trial calendar, which Justice Doyle denied in a Decision and Order dated August 14, 1996, on the ground that the plaintiff's motion papers did not "apprise the court of the basis of the instant action [ ]or ... satisfactorily demonstrate its merit." The plaintiff moved for reconsideration on September 12, 1996, which Justice Doyle denied on December 2, 1996.

On January 15, 1997, the plaintiff alleges that he submitted another motion to restore his case to the trial calendar, which Justice Doyle denied on April 10, 1997.

The plaintiff appealed from Justice Doyle's April 10, 1997 Decision to the Appellate Division, Second Department. On December 15, 1997, the "Court refused to hear such appeal on the grounds that plaintiff's motion to restore his case to the trial calendar, dated January 15, 1997, was in effect a motion to reargue which is not appealable." The Court takes judicial notice of the Second Department's decision, which is attached as an exhibit to the defendant's moving papers. The Second Department dismissed the plaintiff's appeal on the ground that "no appeal lies from an order denying reargument." Apparently, the plaintiff did not appeal any of Justice Doyle's other decisions in the case, including the original Order dated August 14, 1996, which denied his motion to vacate the dismissal and restore the case to the calendar.

## B. The Prior Federal Lawsuit (the "Federal Case")

The *pro se* plaintiff initiated a lawsuit against the Town of Riverhead in the United States District Court for the Eastern District of New York in January 1993, approximately two months before initiating the State Court lawsuit. The Federal Case, Docket Number CV 93–246, was assigned to United States District Judge Leonard D. Wexler.

The Federal Case, like the State Case, arose from the June 1987 search of the plaintiff's home and seizure of the storage box. Specifically, the Complaint stated that the "defendant Town of Riverhead violated his ... civil rights in that agents of said defendant unlawfully seized, retained and destroyed a metal storage box which was a family heirloom and the lawful property of the plaintiff." The Complaint in the Federal Case raised a single cause of action for a Judgment declaring that "the defendant Town of Riverhead unlawfully seized and destroyed this plaintiff's personal property in violation of his civil rights," and sought an Order directing the Town of Riverhead to "compensate the plaintiff for the costs and disbursements of this action."

On May 5, 1993, the plaintiff entered into a Stipulation of Discontinuance with Prejudice, which Judge Wexler "So Ordered." Two days later, on May 7, 1993, the plaintiff signed a release which stated, in relevant part, that in exchange for consideration of $1,500, the plaintiff:

hereby acknowledge[s], releases and discharges [the] Town of Riverhead [and its] heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the RELEAS-

EE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reasons any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

This release applies only to case number CV 93–246, i.e., John R. Ackerman v. Town of Riverhead, pending in the United States District Court, Eastern District of New York.

### C. The Instant Lawsuit

The Complaint in the instant case raises claims against Justices Doyle and Werner based on their treatment of the plaintiff's State Case.

With regard to Justice Doyle, the Complaint states that "Defendant Robert W. Doyle's refusal to restore this plaintiff's case to the trial calendar not only violates the plaintiff's 14th Amendment Constitutional Right to due process but such refusal constitutes a groundless, arbitrary and capricious decision in that said decision is based on a discriminatory standard which is little more than a ruse designed to deprive this plaintiff, a lay person, of his right to trial." As the plaintiff explains, "When all is said and done, this plaintiff finds that he has not only been raped by the Town of Riverhead in the loss of a treasured possession, but has also been raped by the defendant, Robert W. Doyle, who has seen fit to mete out justice as a political despot."

With respect to the defendant Hon. Mary M. Werner, the then District Administrative Judge, the plaintiff maintains that she "failed to provide necessary supervision and management of judicial officers under her jurisdiction by virtue of the allegations cited" in the Complaint.

Although Ackerman does not assert a vehicle under which he raises his constitutional claims, in construing the complaint broadly, as the Court must for a pro se litigant (*see Alexandre v. Cortes*, 140 F.3d 406, 408 (2d Cir.1998)), the Complaint can be viewed as one brought under 42 U.S.C. Section 1983 for deprivation of due process. The plaintiff's Complaint seeks the following: (1) an "injunction which precludes defendants from engaging in such unlawful behavior"; and (2) an Order directing the Justices to "restore this plaintiff's case to the trial calendar in the New York State Supreme Court, Suffolk County." Although the Complaint seeks compensatory relief, during oral argument before the Court on April 16, 1999, the plaintiff expressly disavowed any request for compensatory relief.

Justices Werner and Doyle move to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) on the following grounds: (1) the plaintiff's claims are barred by the 11th Amendment; (2) the defendants are absolutely immune from this lawsuit; (3) Justice Werner is not liable in a civil rights lawsuit under a respondeat superior and vicarious liability theory; (4) this suit is barred under the *Rooker–Feldman* doctrine.

### II. DISCUSSION

#### A. 12(b)(6) Motion to Dismiss for Failure to State a Claim: The Standard

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their complaint which would entitle them to relief. *S.E.C. v. U.S. Environmental, Inc.,* 155 F.3d 107, 110 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the complaint is legally sufficient. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the

complaint as true, and construe all reasonable inferences in favor of the plaintiffs. *Connell v. Signoracci*, 153 F.3d 74 (2d Cir.1998); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). Further, district courts should "construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir.1989) (per curiam); *see also Alexandre v. Cortes*, 140 F.3d 406, 408 (2d Cir.1998). Further, district courts should "construe *pro se* complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir.1989) (per curiam).

Although the Justices raise numerous grounds for dismissal, the Court will only touch upon two legal theories which mandate dismissal.

### B. Absolute Judicial Immunity

 It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Butz v. Economou*, 438 U.S., 478, 511–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Maestri v. Jutkofsky*, 860 F.2d 50, 52–53 (2d Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989); *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465 (E.D.N.Y.1998) (Seybert, J.). Judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption." *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d at 489 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ).

 Absolute judicial immunity applies to all judges and other persons engaged in a judicial function, which is defined as the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Burns v. Reed*, 500 U.S. 478, 498–502, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The doctrine affords absolute immunity from damage suits for their judicial acts, unless such acts are done in the clear absence of all jurisdiction. The Supreme Court has emphasized that jurisdiction over the subject matter is the key element conferring immunity in a particular circumstance, and the inquiry is whether a defendant Justice had jurisdiction over the subject matter before him when he took the challenged action.

 The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Id.* An additional limitation is that a judge is immune only for actions performed in his judicial capacity. *Id.* at 360–63, 98 S.Ct. 1099; *see also Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir.1988). Thus, because the rule of absolute judicial immunity is designed to protect the integrity of the judicial process, by allowing judges to "be at liberty to exercise their functions with independence and without fear of consequences," *Pierson v. Ray*, 386 U.S. at 554, 87 S.Ct. 1213, the rule applies even where the judge is accused of acting maliciously or corruptly, *id.*, however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff, and "despite any 'informality with which [the judge] proceeded,' and … any ex parte feature of the proceeding." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quoting *Stump v. Sparkman*, 435 U.S. at 363 and n. 12).

■ The Supreme Court has developed a "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger*, 474 U.S. at 201–02, 106 S.Ct. 496. The issue of "immunity analysis rests on functional categories, not on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* (citations omitted). In deciding whether absolute judicial immunity applies a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. at 362, 98 S.Ct. 1099. Other relevant factors include (i) the adversary nature of the process, (ii) the correctability of error on appeal, (iii) the importance of precedent, and (iv) the presence of safeguards that reduce the need for private damage actions as a means of controlling unconstitutional conduct. *Cleavinger*, 474 U.S. at 202, 106 S.Ct. 496.

■ Here, all of Ackerman's claims are barred because they stem from judicial decisions made while lawfully presiding over a case properly before the Supreme Court of the State of New York. "There is no evidence proffered, nor plausible claim suggesting, that either Justice was without jurisdiction to decide the matters or that they acted outside their judicial capacity." *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d at 489.

The Court rejects Ackerman's contention that because the Justices were engaging in "ministerial duties," immunity does not shield their actions. Justices Doyle and Werner were performing a judicial function with respect to each and every act alleged in the complaint, whether denominated as a "ministerial duty" or otherwise, and because they were not acting in the clear absence of all jurisdiction, they are absolutely immune from suit in this case. Accordingly, the motion to dismiss the Complaint by Justice Doyle and Justice Werner on the grounds of absolute judicial immunity is granted in its entirety.

■ The Court also declines to adopt the plaintiff's theory that since his suit seeks injunctive relief, the judicial officers are not immune from suit. Prior to October 1996, it was established that a public official's right to immunity, whether absolute or qualified, pertained only to claims for monetary damages. *See, e.g., Pulliam v. Allen*, 466 U.S. 522, 536–37, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (holding that judicial immunity did not extend to claims for injunctive relief). Under *Pulliam*, the Justices may not have been immune from Ackerman's claim for injunctive relief. However, in October 1996, Congress amended Section 1983 to bar injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C.A. § 1983; Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853; *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir.1999); *Hili v. Sciarrotta*, 140 F.3d 210, 215 (2d Cir.1998). Because Ackerman does not allege, and the record does not suggest, that a declaratory decree was violated or that declaratory relief was unavailable, the claim against Justices Doyle and Werner must be dismissed.

## C. *Rooker–Feldman* Doctrine

■ As a separate and independent basis to dismiss this action, Justices Werner and Doyle raise the doctrine pronounced in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–17, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Under these Supreme Court decisions, a federal district court has no jurisdiction to consider collateral attacks to state court judgments, as such determination would be an exercise of appellate jurisdiction

whereas the district courts are limited strictly to original jurisdiction. A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and may be raised at any time by either party or sua sponte by the court. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996) (citations omitted).

■ In the Court's view, any adjudication of the plaintiff's claims would run directly afoul of the *Rooker–Feldman* doctrine prohibiting review of state court decisions. This Court, as a federal district court, is without subject matter jurisdiction to entertain claims that Justice Doyle and Justice Werner handled his state court lawsuit improperly. All of Ackerman's claims against the Justices arise from decisions rendered in the state court lawsuit. As the Supreme Court noted in *Rooker*, even if the state court was wrong, the judgment is an effective and conclusive adjudication until modified or reversed in the appropriate appellate proceeding. *Rooker*, 263 U.S. at 415, 44 S.Ct. 149. Significantly, the *Rooker* Court addressed precisely the situation presented here when it noted that if a litigant in state court fails to file a timely appeal, "after that period elapses an aggrieved litigant cannot be permitted to do indirectly [in federal court] what he can no longer do directly." *Id.* The plaintiff could have appealed from Justice Doyle's Order dated August 14, 1996 which denied his motion to vacate the dismissal and restore the case to the calendar. He did not do so. Accordingly, because the *Rooker–Feldman* doctrine divests this Court of jurisdiction to review the underlying New York State court decisions, the motion to dismiss on behalf of Defendants Justices Doyle and Werner is granted in its entirety.

■ Contrary to Ackerman's theory, raised during oral argument before the Court on April 16, 1999, the *Rooker–Feldman* doctrine is not rendered inapplicable merely because no trial on the merits was held in his State Case. *See, e.g., Vasile v.*

*Dean Witter Reynolds Inc.*, 20 F.Supp.2d at 493 (pursuant to the *Rooker–Feldman* doctrine, the district court found that it lacked jurisdiction to adjudicate the litigant's claims against state court judges that arose from the entry of a state-court default judgment against him, contempt proceedings arising therefrom, and subsequent state court decisions upholding the default judgment); *Odom v. Columbia University*, 906 F.Supp. 188, 196 (S.D.N.Y. 1995) (holding that under the *Rooker–Feldman* doctrine, the federal district court lacked jurisdiction to declare that the default judgment obtained by the university in its debt collection action in state court was invalid, since the student was essentially seeking federal review of state court's decision to enter default judgment).

In sum, the Court finds that to adjudicate any of plaintiff's claims would run directly afoul of the *Rooker–Feldman* doctrine prohibiting review of state court determinations. This Court, as a federal district court, is without subject matter jurisdiction to entertain claims that the New York State court system in adjudicating plaintiff's claims and motions acted either contrary to law or inadequately. As the Supreme Court noted in *Rooker*, even if the state court was wrong, the judgment is an effective and conclusive adjudication until modified or reversed in the appropriate appellate proceeding. 263 U.S. at 415, 44 S.Ct. 149. For these reasons, the plaintiff's claims are barred under the *Rooker–Feldman* Doctrine.

**D. Futility of Restoring the Plaintiff's Case to the Calendar in State Court**

The Court notes, albeit parenthetically, that even if the plaintiff were able to overcome the hurdles of judicial immunity and the *Rooker–Feldman* doctrine, and even if the Court were to grant the plaintiff all of the relief he requested, it would be an exercise in futility, in this Court's view. As the Court expressed during oral argument, in the event his case were restored

to the State Court's calendar, it nevertheless would be doomed for dismissal.

The federal case was based on the same set of facts, namely, the allegedly improper search of his home, seizure of the metal storage, and subsequent destruction of the box by Riverhead police officers. As noted previously, on May 5, 1993, Ackerman entered into a stipulation of discontinuance of his Federal Case, with prejudice, which Judge Wexler "So Ordered." Two days later on May 7, 1993, the plaintiff signed a release in exchange for consideration of $1,500.

As the Second Circuit stated in *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834 (2d Cir.1991), "A stipulation dismissing an action with prejudice can have the preclusive effect of res judicata." *Id.* at 837. In *Samuels*, the plaintiff, an African American man, had been fired less than one month after giving deposition testimony damaging to his employer in a civil rights suit. Samuels filed an action for employment discrimination in federal court under 42 U.S.C. § 1981 and Title VII. While that case was pending, the Supreme Court handed down its decision in *Patterson v.. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which implied that § 1981 did not cover employment discrimination. *Samuels v. Northern Telecom, Inc.*, 942 F.2d at 835. Based on this decision, Samuels agreed to dismiss his action with prejudice. Later, after obtaining a right to sue letter from the EEOC, Samuels filed a second action alleging violations of Title VII. *Id.* at 836. The Second Circuit affirmed the district court's dismissal of the second action under the doctrine of res judicata, writing:

> Res judicata may not be avoided on the basis of overbroad pleading appearing in the initial complaint or an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice.
>
> \*\*\*
>
> Faced with these disturbing allegations, it would have been preferable if plaintiff

could have his day in court. Unfortunately, however, that possibility is foreclosed by the circumstances presented herein, even if they were only inadvertent.

942 F.2d at 837.

█ A straightforward application of the well-settled principles set forth above would necessarily result in dismissal of Ackerman's State Case, if it were reinstated. Once Ackerman signed a release in his Federal Case, all other claims arising out of the same transaction or series of transactions became barred, even if the State Case was based on different theories, sought different remedies, and alleged additional facts. Thus, it is of no moment that the Federal Case alleged a civil rights violation, and the State Case raised a negligence claim. The Settlement expressly applied to "all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the [Town of Riverhead]."

The Court is not persuaded by Ackerman's argument that because the Release "applies only to case number CV 93–246"—the index number assigned to the prior Federal Case—the settlement would have no preclusive effect in the State Case. If anything, the Release *expands* the reach of the settlement, which unambiguously applies to "*all* actions, causes of action, suits, . . . controversies, . . . damages, . . . claims and demands *whatsoever*, in law, admiralty or equity" against the Town of Riverhead. Under the plaintiff's view, the Release would not prohibit Ackerman from initiating another federal lawsuit assigned to a different index number but based on the identical facts underlying the complaint filed in the prior Federal Case. Such an reading of the Release defies the law and common sense.

### E. Leave to Replead

 Finally, the Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate. *See Ruffolo v. Oppenheimer & Company*, 987 F.2d 129, 131 (2d Cir.1993).

## III. CONCLUSION

After reviewing the parties' submissions, hearing oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendants' motion to dismiss the Complaint is granted in its entirety, and the Complaint is dismissed with prejudice; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**