**Linda GILBERT, et al., Plaintiffs,**

v.

**John D. FERRY, Jr., et al., Defendants.**

No. 03–60185.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 19, 2003.

Richard L. Steinberg, Richard L. Steinberg Assoc., Detroit, MI, for Plaintiffs.

Gary P. Gordon, Margaret A. Nelson, John F. Szczubelek, Michigan Department of Attorney General, Lansing, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BATTANI, District Judge.

Before the Court are Plaintiffs' Motion for Summary Judgment (Doc. # 13–1) and Defendants' Motion to Dismiss (Doc. # 20–1). Plaintiffs brought this 42 U.S.C. § 1983 suit for declaratory and injunctive relief against four justices of the Michigan Supreme Court and the State Court Administrator of Michigan. The Plaintiffs challenge, on due process grounds, the refusal of the justices to recuse themselves in two cases pending before the Michigan Supreme Court. For the reasons set forth below, the Court finds it lacks subject matter jurisdiction to hear this suit and thereby GRANTS Defendants' motion to dismiss.

## I. BACKGROUND AND PROCEDURAL HISTORY

The current dispute arises out of a politically charged dialogue between Plaintiff Fieger, and Justices Corrigan, Taylor, Young, and Markman (hereinafter "the Justices"). Mr. Fieger is a former gubernatorial candidate and a well-known trial lawyer in Michigan. During his career, Mr. Fieger has been an outspoken critic of members of the Michigan judiciary.[1] The Justices, for their part, have censured Plaintiff Fieger and his supporters for espousing liberal views on crime, tort reform, and other controversial issues.[2] At a variety of campaign events, the Justices have announced stances that, in the opinion of some, reveal a bias against trial lawyers such as Mr. Fieger.[3] The relationship between Mr. Fieger and the Justices apparently worsened during the 2000 judicial election cycle when groups, such as the Republican Party and the Michigan Chamber of Commerce, sponsored campaign advertisements in favor of the Justices that targeted Mr. Fieger in vitriolic terms. While this campaign material did carry a disclaimer indicating that it was not authorized by any judicial candidate, Plaintiffs claim it was implicitly authorized by the Justices.

Although Mr. Fieger has been involved with as many as thirty-eight cases filed with the Supreme Court, Plaintiffs argue that two recent cases warrant scrutiny. See Gilbert v. Daimler Chrysler Corp., Civil Action No. 94–409–216–NH (Wayne County Cir. Ct.) [hereinafter Gilbert ]; Patricia Graves and Frank Amedure, Jr., Personal Representatives of the Estate of Scott Amedure v. Warner Brothers, Civil Action No. 95–494–536–NZ (Oakland County Cir. Ct.) [hereinafter Amedure ]. Plaintiffs claim that even though Mr. Fieger did not argue the cases at the appellate level, his involvement at the trial level is enough to provoke the alleged bias of Justices Corrigan, Taylor, Young, and Markman.

In the first case, Gilbert, the Michigan Court of Appeals affirmed a substantial judgment in Plaintiff Gilbert's favor. Subsequently, the Michigan Supreme Court granted leave to appeal. On April 8, 2003, the court issued a unanimous order allowing the Michigan and United States Chambers of Commerce to file briefs separately as amicus curiae. On April 16, Ms. Gilbert filed a motion for recusal against Justices Corrigan, Taylor, Young, and Mark-

1. In 1996, Fieger is reported as criticizing the Michigan Court of Appeals, including then Judge Corrigan, as follows: "they're squirrels, mollusks and lizards...and if they don't like what I am saying about them, let them come down here and tell me." John Larabee, Kevorkian, Fieger Hog Limelight During Trial, THE DETROIT NEWS, February 25, 1996, at B1.

On another occasion, Fieger described the judges on the Court of Appeals and the Supreme Court as "fascists." Cassandra George–Sturges, Michigan's Bad Boy Geoffrey Fieger Unseen and Unheard, TRIUMPH, Nov.-Dec., 1999, at p. 28.

2. For example, during an address made at the August 2000 GOP State Convention, Justice Robert Young stated:

We believe that judges should not be the adult supervision for society...And so unlike the 40 years of tyranny that we've all experienced, that have awarded stupidity and banality, we support personal accountability. That means that if you're stupid enough to put hot coffee between your legs and drive, and get burned, you don't come to the Michigan Supreme Court for relief....Geoffrey Fieger, and his trial lawyer cohorts hate this court. There's honor in that.

Aff. of Geoffrey N. Fieger, Ex. H (Doc. # 2–1).

3. See, e.g., Eugene D. Mossner, Letter to the Editor, Sitting Justices Should Know Better, 14 MICH. L.W. 1859, Oct. 9, 2000 (criticizing the campaign tactics of Justices Markman, Taylor, and Young).

man, in addition to Justice Weaver, who is not a party to this lawsuit. In a lengthy brief filed in support of her motion, Gilbert argued recusal was necessary because the probability of actual bias, on the part of the Justices, was too high to be constitutionally tolerable. Gilbert identified two possible sources of bias. First, she claimed the Justices had a pecuniary interest in the case because they had received large monetary donations and campaign support from the *amicus curiae*. Second, she contended the Justices' public discourse revealed a deep-rooted animus toward Fieger. Gilbert argued that the Justices' participation in the case not only violated her due process rights, but also undermined the public's trust in the integrity of the Michigan judicial system. Nevertheless, on September 17, 2003, the Justices denied Gilbert's motion for recusal. No opinion was issued in denying the motion as to Justices Corrigan, Taylor, Young, and Markman.[4]

In the second case, *Amedure*, the Michigan Court of Appeals reversed a judgment favorable to Plaintiffs Graves and Amedure. Subsequently, the Michigan Supreme Court denied the appellants' application for appeal. Graves and Amedure then filed a Motion for Reconsideration and a Motion for Recusal on the same grounds as in *Gilbert*. On October 10, 2003, the state court denied both motions.

Plaintiffs initiated the current action on September 5, 2003 under 42 U.S.C. § 1983, alleging that Defendants violated their constitutional right to a fair hearing before an independent and impartial tribunal under the Due Process Clauses of the Fifth and Fourteenth Amendments. Plaintiffs request a variety of relief including: (1) a declaratory judgment that their due pro-

cess rights have been violated; (2) an injunction preventing the Justices from participating in any case involving Plaintiffs; and (3) an injunction requiring Defendant Ferry to reassign the *Gilbert* and *Amedure* cases to a panel of randomly drawn Michigan appellate judges.

On September 8, this Court rejected Plaintiffs' request for a temporary restraining order to bar the Michigan Supreme Court from taking any further action on the *Gilbert* and *Amedure* cases. On September 19, the Court denied Plaintiffs' renewed application for a temporary restraining order and denied Plaintiffs' request to conduct discovery. The parties filed the current motions for summary judgment and dismissal on September 25 and October 2 respectively.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

**4.** Justice Weaver, however, did issue an opinion, explaining her reasons for denying the motion for recusal, that explored the nature

and effect of the Michigan Chamber of Commerce's contributions to her reelection campaign.

## B. Lack of Subject Matter Jurisdiction

 A Rule 12(b)(1) motion addresses whether the Court has authority or competence to hear a case. A defendant may challenge the subject matter jurisdiction alleged by the complaint either facially or substantively. *Gould Elec. Inc. v. United States,* 220 F.3d 169 (3d Cir.2000). On a facial attack, the defendant merely questions whether the language of the complaint adequately invokes the court's jurisdiction over the subject matter of the case. A substantive attack, in contrast, goes beyond the complaint and challenges the facts upon which subject matter jurisdiction depends. "[N]o presumptive truthfulness applies to the factual allegations....In reviewing [substantive attacks], a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

## III. DISCUSSION

Although the parties present many provocative legal arguments concerning judicial recusal and disqualification, the focus of this opinion will be on the availability of the requested relief and the limits of the Court's subject matter jurisdiction. As discussed below, the absolute judicial immunity doctrine and the *Rooker–Feldman* doctrine provide separate and independent grounds for dismissing Plaintiffs' claims.

## A. The Absolute Judicial Immunity Doctrine

 Under the doctrine of judicial immunity, it is well established that judicial officers are absolutely immune from § 1983 suits for monetary damages based on actions undertaken in their judicial capacity. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). By enacting the 1996 Federal Courts Improvement Act (hereinafter the "FCIA"), Congress has expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer.[5] Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996). Absolute judicial immunity applies not only to judges, but also to any person exercising judicial power. *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994) (probate court administrator entitled to judicial immunity because he performed a task "integral or intertwined with the judicial process").

 The absolute judicial immunity doctrine was created to encourage uninhibited judicial decision-making. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The Supreme Court has emphasized that a judicial officer must be "free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 80 U.S. 335, 347, 13 Wall. 335, 20 L.Ed. 646 (1871).

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

---

**5.** The FCIA does not shield judicial officers when a(1) "a declaratory decree was violated or declaratory relief was unavailable," or (2) the judicial officer was acting in clear excess of her jurisdiction. Pub.L. No. 104–317, § 309(c). Neither of these exceptions, however, are applicable to the instant suit.

*Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Accordingly, judicial immunity "applies even when [a judicial officer] is accused of acting maliciously or corruptly." *Id.*

### 1. *The Justices Are Entitled to Absolute Immunity from Injunctive Relief*

■ In this case, Plaintiffs request the Court to enjoin the Justices from participating in any current or future appeal involving Mr. Fieger. The judicial immunity doctrine, as modified by the 1996 Federal Court Improvement Act, clearly bars this drastic injunctive relief. The Justices are entitled to the full protection of the immunity doctrine because the requested relief is premised on alleged misconduct stemming from the performance of their judicial duties. *See Ackermann v. Doyle,* 43 F.Supp.2d 265, 271–72 (E.D.N.Y.1999) (finding that New York Supreme Court Justice was absolutely immune from injunctive relief based on decisions made while presiding over federal plaintiff's state court action).

### 2. *Defendant Ferry Is Entitled to Immunity*

■ Plaintiffs also request the Court to enter an injunction requiring Defendant Ferry to reassign the *Gilbert* and *Amedure* cases to a randomly drawn panel of appellate judges. The absolute judicial immunity doctrine extends to Defendant Ferry as well, because he was made a party to this lawsuit solely by virtue of his role as State Court Administrator.[6] *See Rodriguez v. Weprin,* 116 F.3d 62, 67 (2d Cir.1997) (law clerk performing scheduling

duties entitled to absolute immunity). The Sixth Circuit has held that clerks and other judicial employees who act under "the direction of a judge [are] performing a function to which absolute immunity attaches." *Foster v. Walsh,* 864 F.2d 416, 417 (6th Cir.1988) (citations omitted). As State Court Administrator, Mr. Ferry acts under the "supervision and direction" of the Michigan Supreme Court when he performs his duties of regulating the Michigan Supreme Court's calendar. *See* MICH. COMP. LAWS § 225(2), MCR 8.103. Since Mr. Ferry was performing an essential judicial function, under the direction of the Michigan Supreme Court, when he scheduled the *Graves* and *Amedure* cases, he is absolutely immune from injunctive relief. *Bush,* 38 F.3d at 847.

### B. The *Rooker–Feldman* Doctrine

■ The *Rooker–Feldman* doctrine divests all federal district courts of subject matter jurisdiction to review state court judgments. *See generally Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362, (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Peterson Novelties, Inc. v. City of Berkley,* 305 F.3d 386, 390 (6th Cir.2002). The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the United States Supreme Court is the exclusive federal court with jurisdiction to review state court decisions. Accordingly, the doctrine prevents district courts from entertaining challenges to state court decisions, "even if those challenges allege that the state court's action

---

**6.** The inclusion of Mr. Ferry as a defendant in this lawsuit is puzzling. Contrary to Plaintiffs' complaint, there is no evidence that Mr. Ferry has any links with the Michigan Chamber of Commerce. *See* First Am. Bill of Compl., paras. 24, 25 (Doc. # 6–1). Nor is there any record that he has publically expressed personal or professional animus concerning Mr. Fieger. Therefore, it is doubtful that Mr. Ferry contributed to the alleged due process violation.

was unconstitutional." *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303.

■ The *Rooker–Feldman* doctrine promotes firmly-held notions of federalism and comity by preserving the integrity "of the state court decision-making process" and "the repose of state court judgments." *Adkins v. Underwood*, 520 F.2d 890, 892–93 (7th Cir.1975). Our federalist system of government relies on the capacity of both state and federal courts to protect the constitutional rights of litigants. *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (finding that our dual system of government "could not function if state and federal courts were free to fight each other for control of a particular case"). Allowing federal district courts to review Michigan decisions could have the deleterious effect of "displac[ing] almost the whole of state litigation into the federal courts by making the final judgment in the state court the cause of action that kicks off a suit to undo that judgment in federal court." *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 563 (7th Cir.1986).

■ Consistent with these federalism and comity concerns, the *Rooker–Feldman* doctrine raises a jurisdictional bar that prevents federal district courts from second-guessing state court decisions. *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The doctrine prohibits federal courts from engaging in appellate review of not only state court judgments, but also of any claim "inextricably intertwined" therewith. *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir.2002). "In practice this means that when granting relief on the federal claim would imply the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction." *Pieper v.*

*Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir.2003) (citation omitted).

■ There is one exception to the *Rooker–Feldman* doctrine. A federal court may exercise jurisdiction "where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular state case." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir.2003) (citation omitted). In determining whether this general challenge exception applies, federal courts " 'cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's compliant,' but instead 'must pay close attention to the *relief* sought by the federal-court plaintiff.' " *Id.* (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). If the requested relief seeks to undo the effect of a state court decision, then the federal court lacks subject matter jurisdiction. *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303.

Since the application of the *Rooker–Feldman* doctrine to this case would necessarily result in dismissal, the parties have deeply contested the mechanics of the doctrine. Defendants contend the doctrine bars review of Plaintiffs' due process claims, because they have either been ruled upon by the Michigan Supreme Court or are inextricably intertwined with other state proceedings. Plaintiffs respond by offering several justifications for not applying the doctrine. First, Plaintiffs argue the doctrine is not triggered by state court rulings on motions for recusal. Second, Plaintiffs contend the doctrine does not apply to Plaintiff Fieger's independent constitutional claim, because he was not a party to the state proceedings. Finally, Plaintiffs argue their suit falls within the general challenge exception to the *Rooker–Feldman* doctrine because it

seeks to question the constitutionality of Michigan's recusal procedures. The Court will address each of these arguments in turn.

### 1. *The Rooker–Feldman Doctrine Is Applicable to this Case*

■ From the outset of this litigation, both parties have been concerned with the operation and effect of the *Rooker–Feldman* doctrine. At a hearing held on September 4, 2003, Plaintiffs requested the Court to enter an emergency restraining order to enjoin the Michigan Supreme Court from taking any further action in the pending cases. Plaintiffs' counsel specifically requested the restraining order to prevent the triggering of the *Rooker–Feldman* doctrine:

> If the [Michigan] Supreme Court denies [the motions], any federally protected rights that this Court might be able to intervene and safeguard will be lost under the *Rooker–Feldman* Doctrine. That's why it's important for this Court to grant a temporary restraining order to preserve the *status quo ante* and to protect its own jurisdiction...

Tr. of Mot. for T.R.O., p. 5 (Doc. # 7–1). Plaintiffs' fears were realized shortly after this hearing when the Michigan Supreme Court ruled on the motions for recusal and reconsideration in *Gilbert* and *Amedure.* Therefore, taking Plaintiffs' own argument

at face value, the *Rooker–Feldman* doctrine divested the Court of subject matter jurisdiction once the Michigan Supreme Court denied the motions.[7]

As Plaintiffs forecasted, this suit has become a *de facto* appeal of the decisions of Justices Corrigan, Taylor, Young, and Markman to participate in the *Gilbert* and *Amedure* cases. The same due process arguments for recusal have been asserted in state and federal court.[8] Namely, it is alleged that (1) the Justices had an improper pecuniary interest in the *Amedure* case because the Michigan Chamber of Commerce had donated millions of dollars to their election campaigns; and (2) the Justices were unable to impartially perform their judicial duties because they had expressed personal and professional animus toward Mr. Fieger. The essence of Plaintiffs' federal complaint is that the high probability of bias violated their due process rights. Since there is no possible avenue by which the Court could reach this conclusion without explicitly holding that the Michigan Supreme Court wrongly decided the motions for recusal, the *Rooker–Feldman* doctrine prohibits the Court from exercising its subject matter jurisdiction. *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir.1998).

Pursuant to the *Rooker–Feldman* doctrine, the Michigan Supreme Court's rul-

---

**7.** While the *Rooker–Feldman* doctrine did not act to bar the Court's jurisdiction before the Michigan Supreme Court entered its rulings, Defendants have argued persuasively that the related doctrine of *Younger* abstention would have required an identical result. *See Hayse v. Wethington,* 110 F.3d 18, 20 (6th Cir.1997) (finding that *Younger* abstention prohibits federal district courts from exercising jurisdiction over pending state court orders). However, the Court need not reach this issue, because once the state court entered its decisions the *Rooker–Feldman* doctrine occupied the field. Plaintiffs should not be afforded special leeway simply because they initiated

this suit on the eve of the Michigan Supreme Court's decisions, over four months after they filed the motion for recusal in *Gilbert.*

**8.** Not only do Plaintiffs submit the same legal arguments, but they also assert the same factual basis for the alleged bias. For instance, Plaintiffs have proffered an affidavit by Mr. Fieger, cataloguing the allegedly improper conduct and statements of the Justices, that is word-for-word identical to an affidavit submitted during the state proceedings. Aff. of Geoffrey N. Fieger (Doc. # 2–1).

ings on the motions for recusal and reconsideration are conclusive unless they are "modified or reversed in the appropriate appellate proceeding." *Ackermann,* 43 F.Supp.2d at 272–73 (relying on the *Rooker–Feldman* doctrine to dismiss a claim that New York Supreme Court justices unconstitutionally presided over a case) (citation omitted). This is not to say, however, that the Constitution does not provide Plaintiffs with a federal forum to present their claims. As Plaintiffs conceded during oral argument, they may avail themselves of a writ of certiorari to the United States Supreme Court. Tr. of Mot. for T.R.O., p. 9 (Doc. # 7–1). *See also Blanton v. United States,* 94 F.3d 227, 234 (6th Cir.1996) (holding that only the United States Supreme Court had the power to review a determination by the Tennessee Supreme Court on a matter of attorney licensing and discipline).

### 2. *The Michigan Supreme Court's Denial of the Motions for Recusal a n d Reconsideration Constitute Final Judgments for the Purposes of the Rooker–Feldman Doctrine*

■ Plaintiffs have taken the position that the *Rooker–Feldman* doctrine is inapplicable because the Michigan Supreme Court has not entered final judgment on the merits of their cases. At oral argument, Plaintiffs' counsel argued the denial of the motion for recusal in *Gilbert* was an "interlocutory order" that was not "final" because the state court could reverse it at any time. Tr. of Mot. Hr'g, p. 25 (Doc. # 44–1). Even assuming, for the purposes of discussion only, that motions for recusal are properly categorized as interlocutory orders, the *Rooker–Feldman* doctrine remains applicable. The Sixth Circuit has recently adopted the majority view that the *Rooker–Feldman* doctrine bars federal district courts from reviewing interlocutory orders, just as it prohibits review of final state court judgments on the merits. *Pieper,* 336 F.3d at 462.

■ Plaintiffs' argument is also flawed in that it creates an artificial distinction between final decisions on the merits of cases and final decisions on motions for recusal. Under the *Rooker–Feldman* doctrine, "[t]he form of the [state] proceeding is not significant. It is the nature and effect which is controlling." *Feldman,* 460 U.S. at 482, 103 S.Ct. 1303 (quoting *In re Summers,* 325 U.S. 561, 567, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945)). The nature and effect of the Michigan Supreme Court's rejection of the motions for recusal and reconsideration is undoubtedly final. *See Chafin v. West Virginia Supreme Court of Appeals,* 1998 WL 1297605 at *4 (S.D.W.Va. Dec. 18, 1998) (holding that decisions by West Virginia supreme court justices not to recuse themselves constituted final "adjudications" protected by the *Rooker–Feldman* doctrine). No other state mechanism exists for Plaintiffs to contest the state court's rulings on the motions. Thus, the state court's denial of the motions must be regarded as a final decision that triggers the *Rooker–Feldman* doctrine. To hold otherwise would upset firmly entrenched notions of federalism and allow interference with any undecided case on the docket of the highest court in Michigan.

### 3. *Plaintiff Fieger's Claim Must Also Be Dismissed.*

■ Plaintiffs argue that even if the Court were to conclude the *Rooker–Feldman* doctrine bars the due process claims of Plaintiffs Gilbert, Graves, and Amedure, the same conclusion does not extend to Plaintiff Fieger, because he was not a par-

ty to the state court proceedings.[9] Plaintiffs correctly explain that in *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995), the Sixth Circuit held that the *Rooker–Feldman* doctrine does not bar a suit by a federal plaintiff who was not a party in a preceding state action. However, the Court is hesitant to interpret the *Owens* decision in a manner that would allow a federal plaintiff, dissatisfied with a state court ruling, to avoid the *Rooker–Feldman* doctrine by including their trial attorney as a co-plaintiff. *See Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir.2000) ("federal court plaintiffs cannot by artful pleading obtain a hearing of a disguised state court appeals that would otherwise be subject to a *Rooker–Feldman* bar").

In *Owens*, the United States Postal Service requested an order from a federal district court enjoining the execution of a writ of mandamus issued by the Ohio Court of Appeals. 54 F.3d at 274. The Postal Service had attempted to participate in the state court proceedings, but its motion to intervene was denied. *Id.* The federal court defendant sought to dismiss the Postal Service's suit by invoking the *Rooker–Feldman* doctrine. The Sixth Circuit rejected this argument and reasoned that the doctrine did not apply, because the Postal Service was not a party to the action in the Ohio courts and had no opportunity to litigate its claims. *Id.*

The circumstances of the instant case do not require the Court to read the *Owens* decision so narrowly as to exclude Plaintiff Fieger from the effects of the *Rooker–Feldman* doctrine. He was the moving party for the motions for recusal, in effect, if not in name. Mr. Fieger was more than a passive participant in the Michigan Supreme Court proceedings. For instance, he signed an affidavit in support of the motions for recusal in which he catalogued a variety of statements and conduct that he believed formed the foundation of the Justices' animus toward him. Indeed, it was his very involvement in the case that Plaintiffs argue gave rise to the issue of bias. Consequently, the federalism and comity interests underlying the *Rooker–Feldman* doctrine require the Court to find that it has no subject matter jurisdiction over Mr. Fieger's constitutional claim.

A different conclusion would be warranted, perhaps, if Mr. Fieger were asserting a cognizable due process claim that is independent from that of his clients. However, the manner in which Plaintiff Fieger's claim has been presented makes clear that only the due process claims of Plaintiffs Gilbert, Graves, and Amedure are the foundation of this lawsuit.[10] In the only discussion of Mr. Fieger's due process claim in the pleadings, Plaintiffs explain that since Mr. Fieger "has a vested, contractual and financial interest in the outcome of both cases[,] . . . he has the *same right* to a fair hearing by an impartial tribunal as the named parties to the State Court litigation." Pls.' Reply Br. to Defs' Answer to Mot. for Prelim. and Perm. Inj., p. 2 (Doc. # 39–1) (emphasis added). This statement demonstrates that Mr. Fieger is either reasserting the due process interests of his clients or predicating his claim on the rights of his clients to a fair and

---

**9.** While Plaintiffs raise this argument in their reply brief in support of their motion for preliminary injunction, the Court will address it for the sake of completeness.

**10.** The tenuous nature of Mr. Fieger's claim is reflected in Plaintiffs' characterization of it as a mere "secondary question." Mot. for Prelim. and Perm. Inj., p. 2 (Doc. # 2–1). If Mr. Fieger believes he has a viable claim, he may file a separate suit where his due process interests, whatever they may be, form the "primary question" presented.

impartial tribunal.[11] No authority has been presented to support this novel theory that a lawyer may champion the due process rights of his clients in the same suit where his clients are co-plaintiffs.

### 4. The Current Suit Does Not Qualify as an Exception to the Rooker–Feldman Doctrine

In their remaining argument, Plaintiffs attempt to bring their case within the general challenge exception to the Rooker–Feldman doctrine. That is, Plaintiffs assert they are challenging the constitutionality of Michigan's recusal procedures for supreme court justices. See, e.g., Tr. on Mot. Hr'g, pp. 34–35, 54–55 (Doc. # 44–1). Accordingly, Plaintiffs claim they are not seeking appellate review of the Michigan decisions, but are instead requesting prospective relief to establish a "methodology" for the Michigan Supreme Court to constitutionally hear cases involving Plaintiff Fieger. Pls.' Br. in Supp. of T.R.O., p. 1 (Doc. # 3–1).

Plaintiffs' assertion, that they are bringing a general constitutional challenge to establish a new "methodology" for judicial disqualification, is not consistent with the relief they request. See Auto. Club of Michigan v. Stacey, 750 F.Supp. 259, 260 (E.D.Mich.1990) (finding the Rooker–Feldman doctrine barred federal plaintiffs' request for both a declaration that state court judge violated their constitutional rights by failing to dismiss their case and an injunction to permanently enjoin the judge from participating in other cases involving the plaintiffs). Instead of seeking a revision of Michigan's recusal procedures that would protect the rights of all

litigants, Plaintiffs seek narrow relief, individualized to the adverse rulings they received in the state proceedings. Namely, Plaintiffs request injunctions that would undo the effect of the Michigan Supreme Court's rulings on the motions for recusal and reconsideration by removing the Gilbert and Amedure cases from the state court's docket, and reassigning them to a new panel of judges.

The Fifth Circuit discussed an analogous situation in Howell v. Supreme Court of Texas, 885 F.2d 308, 312 (5th Cir.1989). In that case, the Fifth Circuit found the Rooker–Feldman doctrine barred a federal district court from evaluating a § 1983 plaintiff's claim that individual justices of the Supreme Court of Texas had violated his due process rights. Id. Howell claimed the justices improperly refused to disqualify themselves despite the fact that they "harbor[ed] a personal bias or prejudice toward" him or because "the impartiality of . . . [the] justices might reasonably be subject to question." Id. at 310. The court rejected Howell's attempt to couch his federal suit as a general challenge to Texas' recusal procedures:

> Although Howell frames his claim in this proceeding as a challenge to Rule 15a, the substance of the claim is that the justices' interpretation of the rule and refusal to recuse themselves under it violated Howell's due process rights. The due process issue was explicit in Howell's Motion to recuse and was necessarily rejected by the justices in denying his motion.

Id. at 312. Accordingly, the Fifth Circuit held the Rooker–Feldman doctrine created an insurmountable jurisdictional bar, be-

---

**11.** It would be peculiar if Mr. Fieger were alleging he had a right to a fair tribunal. Assuming this is the case, Mr. Fieger must view himself as a "party" before the Michigan Supreme Court, since this is the only tribunal to which he could be referring. Therefore, even under this interpretation, Owens does not foreclose the application of the Rooker–Feldman doctrine.

cause Howell's claim was "inextricably intertwined" with the denial of his motion for recusal. *Id.*

Similarly, this Court may not evaluate Plaintiffs' "challenge," because it is "inextricably intertwined" with the decisions of Justices Corrigan, Taylor, Young, and Markman's to not recuse themselves. Although Plaintiffs did not question the constitutionality of a specific Michigan court rule in the state proceedings, the due process concerns Plaintiffs now raise in support of their "challenge" were explicit in the motions for recusal and reconsideration. *Id.* Therefore, allowing Plaintiffs to reassert their due process claims in federal court would run afoul of the *Rooker–Feldman* doctrine's prohibition of collateral attacks on state court decisions.

An argument could be made that it is unclear whether the Michigan Supreme Court actually considered Plaintiffs' due process claims, because there is no procedural rule requiring the Justices to issue an opinion to supplement an order denying a motion for recusal. A similar argument was recently raised and rejected by the Ninth Circuit in *Bianchi v. Rylaarsdam,* 334 F.3d 895 (9th Cir.2003). The *Bianchi* plaintiff filed a federal civil rights suit seeking an injunction vacating an adverse decision by a panel of California Court of Appeal justices and reassigning his case to be heard by a different panel. *Id.* at 898. The plaintiff claimed the appellate justices were biased against him and violated his due process rights by refusing to recuse themselves. *Id.* at 899. As in *Howell,* the Ninth Circuit determined that the *Rooker–Feldman* doctrine barred district court review because the plaintiff's constitutional claims were inextricably intertwined with the state court's rulings. *Id.* at 899–01. The Ninth Circuit found that the silence of the California justices in denying the plaintiff's motion for recusal "did not indicate that they failed to consider the constitutional claims presented to them." *Id.* at 900. Moreover, the court held that it was "immaterial" that the justices did not specify their reasons for denying plaintiff's motion, because the injury alleged in the federal suit resulted from the state court's judgment. *Id.* at 900–01 (citation and footnote omitted).

For the reasons articulated by the Ninth Circuit, the silence of the Michigan Supreme Court does not warrant a rejection of the *Rooker–Feldman* doctrine by this Court. Plaintiffs' constitutional claims were part and parcel of the motions to recuse that were considered and rejected by the Michigan justices. Certainly, there may be compelling reasons for creating a procedural rule requiring justices to articulate their reasons for refusing to disqualify themselves. In particular, such a rule would do much to advance the Michigan Supreme Court's appearance of impartiality. The decision to enact such a rule, however, appropriately lies with Michigan's judicial officers. *See In re J.K.,* 468 Mich. 202, 661 N.W.2d 216, 227 (2003) (Weaver, J., nonparticipation statement).

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss and DENIES Plaintiffs' Motion for Summary Judgment.

IT IS SO ORDERED.